(63 App. Div. 181.)

PEOPLE ex rel. SOCIETY OF THE FREE CHURCH OF ST. MARY THE VIRGIN v. FEITNER et al., Com'rs of Taxes & Assessments.

(Supreme Court, Appellate Division, First Department. July 9, 1901.)

TAXATION—EXEMPTION—RELIGIOUS CORPORATION—USE OF PROPERTY.

The relator is a domestic corporation, organized exclusively for religious, charitable, and educational purposes. It owns a church, and attached thereto, forming part of the building (1) a clergy house, containing a Sunday-school room, which may be opened into and form part of the church, rooms for the use of the choir, rooms for the men's guild, and sleeping rooms for the curates and other assistants of the rector, and engineer of the building; (2) a mission house, containing a chapel, in which daily religious services are held, a reception room for those desiring to consult the sisters, rooms for the women's guild, and sleeping rooms and kitchen for the sisters engaged in instruction, religious education, and charitable work; and (3) a rectory, containing a reception room for those consulting the rector officially, the vestry room, and rooms for the rector and his family. No rent or income is derived from any part of the building. *Held*, under Laws 1896, c. 908, § 4, subd. 7, as amended by Laws 1897, c. 371, providing that real property of a corporation organized exclusively for religious, charitable, or educational purposes, or for two or more of such purposes, and used exclusively for one or more of such purposes, shall be exempt from taxation, that the whole of such building is exempt.

Van Brunt, P. J., dissenting.

Appeal from special term, New York county.

Certiorari by the People, on relation of the Society of the Free Church of St. Mary the Virgin, to Thomas L. Feitner and others, commissioners of taxes and assessments. From an order quashing the writ, relator appeals. Reversed.

Argued before VAN BRUNT, P. J., and HATCH, O'BRIEN, INGRAHAM, and McLAUGHLIN, JJ

William C. Wallace, for appellant.
James M. Ward, for respondents.

McLAUGHLIN, J.   The relator is a domestic corporation organized under chapter 218 of the Laws of 1854, and, according to the allegations of the petition, which are not denied by the return, it is, so far as the tax law is concerned, a corporation organized exclusively for religious, charitable, benevolent, and educational purposes, and the moral and mental improvement of men and women. It owns certain real estate in the city of New York, upon which is located a church building, in which religious services are held.   Annexed to and forming a part of this building are what are termed in the record a "clergy house," a "mission house," and a "rectory." In 1899 the commissioners of taxes and assessments in and for the city of New York assessed, for the purposes of taxation, the clergy house at $12,000, the mission house at $10,000, and the rectory at $8,000.   The relator insisted that no part of the building was liable to taxation, and applied to the commissioners of taxes and assessments to have the assessment corrected in accordance with its contention.   The application was denied, and it thereupon instituted proceedings by writ of certiorari to review the action of the commissioners.   Its efforts, however, were unsuccessful; the court holding that the assessment was correctly made, except as to the clergy house, which assessment was reduced to the extent of $2,000, and in all other respects confirmed.   From this order the present appeal is taken.

It is to be noted that there is no dispute as to the material facts involved, and the sole question presented is whether the portion of the building assessed, under the proofs presented, comes within the provisions of subdivision 7 of section 4 of the general tax law (chapter 908, Laws 1896, as amended by chapter 371, Laws 1897), and is exempt from taxation.   The provision of the statute referred to reads as follows:

"The real property of a corporation or association organized exclusively for the moral or mental improvement of men or women, or for religious, Bible, tract, charitable, benevolent, missionary, educational, library, * * * purposes, or for two or more such purposes, and used exclusively for carrying out thereupon one or more of such purposes * * * shall be exempt from taxation."

The answer to the question necessarily depends upon the work to which the portions of the building assessed are devoted.   The main portion of the building, as already indicated, is a church, in which religious services are held at stated times; there being at least five services on each day, and additional services on certain days each week.   The church is known as a "mission church."   Its work is mainly among the very poor in the immediate locality in which the church is located.   To use the words of the rector: "We deal," says he, "particularly with the poor on the West side,—Eighth avenue."   The record discloses that the parish is a large one, and the staff of workers consists of a rector, aided by three assistants or curates, and, in addition thereto, three sisters.   The work of the assistants and the sisters is mainly carried on by guilds, which are organized for the purpose of doing, in connection with the church, charitable and missionary work among the poor, such as furnish-

ing them with food and clothing, looking after them when they are sick, and inducing them to attend meetings held in the guilds, with the ultimate object of getting them into the church. There is what is known as the "Men's Guild," which is made up entirely of men, and for their use a room is set apart, in which they meet at stated times during the week, and read or play billiards; and at the close of each meeting religious instruction is given, and devotional exercises held. There is also what is known as the "Women's ·Guild," and a portion of the building is set apart for their use, where meetings are held for the benefit of mothers, young women, and young girls, over which the church assumes to have a special interest, particularly in spiritual matters. At the close of their meetings, as in the men's guild, religious instruction is given, and devotional exercises held. The rector of the church holds himself in readiness at all times, either night or day, to respond to any calls that may be made upon him, either to assist or advise as to this work. Keeping in mind the work that is done, it at once becomes apparent, as it seems to us, that the portion of the building set apart for this use is as exclusively devoted to religious and charitable purposes as the church itself. The clergy house, which was assessed at $12,000, is located in the southwest corner of the church building. Upon the first floor is what is called "St Joseph's Hall," which is used as a Sunday-School room, and in which other religious services are held. It is so constructed that whenever necessary, by reason of the church being overcrowded, it can be made a part of the seating capacity of the church. Upon this floor is also located the choir vestry. Here the choir boys assemble before service and put on their vestments, and there are also rooms for the keeping of their vestments. The chapel of the church proper extends to and occupies the second or gallery floor. The third floor is used for the men's guild, and consists of a reading room, a club room, a billiard room, and a library. Here the men connected with the guild assemble at least one night during each week, there being at times from 60 to 80 men present. Other nights in the week the library and billiard rooms are used. Upon the fourth floor are the sleeping rooms of the assistants to the rector, and on the fifth or top floor are rooms used by the engineer who has charge of the heating and mechanical apparatus of the entire building. In the southeast corner of the church is located the mission house, which was assessed at $10,000, upon the first floor of which is located St. Elizabeth's Chapel, where there is an altar used daily for religious services. There is also upon this floor a general reception room, where all persons desiring to consult with the sisters are received. Here, also, the chapel extends to and occupies all of the second floor. The third floor is set apart for the work of the women's guild, upon which are located rooms which, according to the testimony of the rector, are used regularly three times each week,—one night for a mother's meeting, one night for a guild of older girls, and Friday afternoons a guild for younger girls,—children. The fourth floor is used as the living rooms of the Mission Sisters, and the fifth floor as their kitchen. The rectory, which was assessed at $8,000, is lo-

cated in the northeast corner of the building. Upon the first floor is the general reception room, where all persons go who desire to consult the rector officially. Upon this floor is also located the vestry room of the church proper. The other rooms are set apart for the use of the rector, his family and servants. The evening work carried on by the church is such that it requires that some one should be in constant attendance, both night and day; and, the rector having general supervision of the entire work, his presence in the building is necessary, so that whenever a call is made, either upon the assistants or the sisters, he can, if necessary, advise and consult with them. This applies equally as to the work done by the assistants and the sisters. No rent or income of any kind is derived by the church from any portion of the building. It is free. Whoever will may come for the purpose of receiving religious or moral instruction.

Under such circumstances, it seems to us that it must be held that the entire building comes within the letter and spirit of the statute, entitling it to an exemption from taxation. The policy of the law in this state, at least, always to encourage corporate institutions of religious and literary character, upon the theory that instruction afforded by either elevates the individual, and therefore benefits the state. Thus, in People v. Barber, 42 Hun, 27, s. c. affirmed in 106 N. Y. 669, 13 N. E. 936, it was held that land upon which a college and other buildings were located, some or a portion of which were used for different purposes,—tailor shop, a shop for repairing shoes, band room, laundry, bakery shop, etc.,—was not liable to taxation, upon the theory that all of them were connected with the general purpose of the institution. And in People v. Commissioners of Taxes and Assessments of City and County of New York, 10 Hun, 246, it was held that a farm of 113 acres used in connection with a college building for the purpose of raising vegetables for the use of the teachers and students, and also for recreation, was not liable to taxation. And in Seminary v. Cramer, 98 N. Y. 121, it was held that the fact that a seminary was rented for a boarding house during the summer did not make it subject to taxation.

Taking into consideration, therefore, the general character of the work done by the relator, including the work done by the sisters and the curates, and the necessity of the rector being present, so that he can advise with them at all times, we do not think any portion of the building is liable to taxation; and for that reason the order appealed from should be reversed, and the prayer of the relator granted, and the assessment corrected accordingly, with costs.

O'BRIEN and INGRAHAM, JJ., concur. VAN BRUNT, P. J., dissents.

HATCH, J. I concur with the views expressed by Mr. Justice McLAUGHLIN in this case, except so far as relates to the assessment upon the rectory and the clergy house, so-called. It appears without dispute that the rectory is erected as an L attached to the

church building proper. It is exclusively occupied as a residence for the rector of the church and his family, and is used for no other purpose. The clergy house is that portion of the building occupied by the three curates connected with the church, and of this building only that part was assessed which is so occupied by them as their living rooms, viz. the third and fourth, or fourth and fifth, stories, which is kept exclusively for them and visiting clergy. These portions of the building, therefore, are in fact dwelling houses of the rector and curates, and for the use of visiting clergy, and as such, by virtue of the express provision of section 4, subd. 9, of the tax law, are entitled to exemption in the sum of $2,000. This sum appears to have been allowed. Aside from the rectory and clergy house, I agree that the remainder of the structure is entitled to exemption for the purpose of taxation, as being fairly comprehended within the statute, and I concur with the prevailing opinion upon that subject. The order should be modified in this respect, and as modified affirmed, without costs to either party.